UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
**ANNETTE WHITTAKER**,

                Plaintiff,

    – against –

**COMMISSIONER OF SOCIAL SECURITY**,

                Defendant.
---------------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

2:18-CV-02697 (AMD)

**ANN M. DONNELLY**, United States District Judge:

    The plaintiff seeks review of the Social Security Commissioner's decision that she was not disabled for the purpose of receiving benefits under Titles II and XVI of the Social Security Act. For the reasons that follow, I remand the case for further proceedings.

## BACKGROUND

    On January 21, 2015, the plaintiff applied for disability insurance benefits, alleging disability because of heart problems, depression and injuries to her left knee and right shoulder, with an onset date of December 1, 2013. (Tr. 118, 208-09, 245.) On April 16, 2015, the plaintiff applied for supplemental security income. (Tr. 210-15.)

    After her claim was denied, Administrative Law Judge April M. Wexler held a hearing, at which a vocational expert and the plaintiff, who was represented by counsel, testified. (Tr. 73-101.) In an August 21, 2017 decision, the ALJ denied the plaintiff's claim for benefits. (Tr. 21.) She determined that the plaintiff had the following severe impairments: "degenerative changes of the left lateral meniscus[,] . . . right shoulder degenerative joint disease, obesity, and depressive disorder," but that none of these impairments met or equaled the applicable listings. (Tr. 13-14.) She concluded that the plaintiff had "the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)" with limitations: she was "limited to simple routine tasks" and "low stress work (meaning no work at a fixed production rate pace)," could

"never kneel, crouch or crawl," could "only occasionally reach overhead with the right upper extremity," and "would need to use a cane for ambulation." (Tr. 15.) She found that although the plaintiff was not capable of performing her past relevant work, she was capable of performing other jobs in the national economy. (Tr. 19-21.)

The Appeals Council denied the plaintiff's request for review. (Tr. 1-3.) The plaintiff filed this action on May 7, 2018 (ECF No. 1), and both parties moved for judgment on the pleadings (ECF Nos. 16, 21).

## STANDARD OF REVIEW

A district court reviewing a final decision of the Commissioner must determine "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005). The court must uphold the Commissioner's factual findings if there is substantial evidence in the record to support them. 42 U.S.C. § 405(g). "'[S]ubstantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Although factual findings by the Commissioner are 'binding' when 'supported by substantial evidence,'" the court will not "simply defer[]" "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir.1984)). Thus, "[e]ven if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009).

## DISCUSSION

The plaintiff makes two arguments: (1) that the ALJ should have given controlling weight to the plaintiff's treating physician's opinion and (2) that the ALJ's RFC determination was not supported by substantial evidence.

**I.  Challenge to Weight Given to Treating Physician's Opinion**

At the time of the hearing, the record before the ALJ included an employability report that Dr. Richard Seldes, the plaintiff's treating orthopedist, completed on April 23, 2015.  In that report, Dr. Seldes opined that the plaintiff was unable to work in any capacity.  She could not stand or walk for "long periods" because of a left knee meniscal tear, and had right shoulder bursitis "which would interfere with lifting." (Tr. 19, 391-92.)  The ALJ did not, however, have any of Dr. Seldes' treatment records; neither counsel nor the ALJ mentioned them at the hearing, or discuss the applicability of 20 C.F.R. §§ 404.935 and 416.1435, also known as "the five-day rule," which requires parties to inform the Commissioner about or submit written evidence "no later than 5 business days before the date of the scheduled hearing."[1]

Although the ALJ received Dr. Seldes' records after the hearing, she did not consider them in reaching her decision.  Relying solely on the employability report, the ALJ accorded Dr. Seldes' opinions about the plaintiff's ability to stand, walk and lift "some weight in determining the residual functional capacity."  She found, however, that Dr. Seldes' "conclusions regarding inability to work in any capacity lack evidentiary support," and observed that "[t]here were no

---

[1] The ALJ and counsel did discuss the five-day rule in connection with missing psychiatric records; the ALJ gave counsel the opportunity to identify an applicable exception to the five-day rule, which counsel did not do.  The plaintiff does not challenge the ALJ's refusal to consider additional evidence from the psychiatrist.

3

records from [t]his provider in the file at the time of the hearing." (Tr. 19.) The record did not include treatment records or opinions from any other treating orthopedists.[2]

The plaintiff challenges the ALJ's decision to accord Dr. Seldes' opinion "some weight," and argues that the ALJ did not sufficiently develop the record. According to the plaintiff, the ALJ was alerted to the existence of additional records and should have requested them before the hearing. (ECF No. 16-1 at 14-18.) The Commissioner responds that the ALJ was not required to consider Dr. Seldes' treatment records because the plaintiff did not submit them at least five days before the hearing as required by 20 C.F.R. §§ 404.935 and 416.1435. (ECF No. 21-1 at 23-25.) Resolution of this question requires analysis of the five-day rule and the ALJ's responsibility to develop the record, as well as the treating physician rule.

20 C.F.R. §§ 404.935 and 416.1435 require parties to submit or inform the Commissioner about written evidence "no later than 5 business days before the date of the scheduled hearing." The ALJ may decline to consider evidence submitted after this date unless the claimant establishes the existence of certain exceptions, none of which apply to this set of facts. "In adopting the five-day rule, the SSA specifically sought to 'appropriately balance the twin concerns of fairness and efficiency.'" *Ocasio v. Comm'r of Soc. Sec.*, No. 18-CV-2472, 2020 WL 1989281, at *5 (E.D.N.Y. Apr. 25, 2020) (summary order) (quoting *Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process*, 81

---

[2] The record also included an evaluation by of consultative examiner Dr. Jerome Caiati, who concluded that the plaintiff had mild limitations for climbing and lifting because of left knee pain and coronary artery disease, and no limitations for sitting, standing, walking, reaching, pushing, pulling and bending. (Tr. 19, 365.) The ALJ gave Dr. Caiati's opinion "some weight," observing that "[t]he fact that the claimant required arthroscopic knee surgery after Dr. Caiati's examination indicates greater limitations for standing and walking." (Tr. 19.) The ALJ also relied on primary care records and "imaging studies showing degenerative changes in the left knee and right shoulder and a history of left knee surgery." (Tr. 16-17.)

4

FR 90987, 90990, 2016 WL 7242991 (Dec. 16, 2016)). "The SSA contemplated that the rule would 'ensure claimants have the benefit of a fully developed record at the time our ALJs conduct their hearings.'" *Id.* Some courts have held that requiring an ALJ to consider evidence that "was not submitted in compliance with the five-day rule would make that rule an empty vessel that need not be complied with." *See, e.g., Arthur L. v. Berryhill*, No. 18-CV-304, 2019 WL 4395421, at *4 (N.D.N.Y. June 6, 2019), *report and recommendation adopted sub nom. Arthur L. v. Saul*, 2019 WL 3213229 (N.D.N.Y. July 17, 2019).

At the same time, however, the ALJ has a duty to develop the record. "Social Security proceedings are inquisitorial rather than adversarial," *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000), and an "ALJ, unlike a judge in a trial, must . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding," *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks and citation omitted). The five-day rule does not eliminate that responsibility. *See Drogo v. Comm'r of Soc. Sec.*, No. 18-CV-6105, 2019 WL 2569599, at *4 (W.D.N.Y. June 21, 2019) ("[T]he Commissioner's proposed reading of the regulation"—under which a plaintiff "must make every effort to obtain the records himself" and failure to do so allows an "ALJ to decline to consider the records"—"is inconsistent with the ALJ's affirmative duty to develop the administrative record.") (internal citations and quotation marks omitted); (*see also* ECF No. 21-1 at 25 (the Commissioner acknowledges that "the ALJ has an obligation to develop the record").)

The duty to develop the record is triggered if the ALJ is aware that there are additional records, even if she does not have the records in hand. *See Ocasio*, 2020 WL 1989281, at *5 ("[E]ven if the plaintiff's attorney had not requested assistance in obtaining the records underlying [a doctor's] assessment and advised the ALJ of their existence, the ALJ was aware or

5

should already have been aware that the medical records were outstanding, and therefore should have requested the records. A plaintiff is not required to obtain records but only to notify the ALJ of their existence . . . no later than five business days before the scheduled hearing. . . . [The] plaintiff made the ALJ aware of his treatment with [the doctor] by providing the ALJ with [the doctor's] opinion statement.") (citations omitted); *Candelaria o/b/o J.L.G.L. v. Saul*, No. 18-CV-557, 2019 WL 4140937, at *6 (W.D.N.Y. Aug. 30, 2019) ("[E]vidence *in the record* indicated that there was *other evidence* that might be relevant to the ALJ's conclusion. In light of that reference in the record, and given the ALJ's duty to develop the record, the ALJ erred in refusing to consider the evidence that the attorney had requested but not yet received by the hearing date. . . . The ALJ therefore abused his discretion by not developing the record, as well as by excluding evidence under the five-business-day rule.").

Like the plaintiffs in *Ocasio* and *Candelaria*, ALJ Wexler was aware that Dr. Seldes was the plaintiff's treating physician; his assessment was part of the record (Tr. 391-92), as was the plaintiff's statement on her Recent Medical Treatment form that Dr. Seldes had treated her since 2014 (Tr. 279). And, the treating physician rule "requires that the opinion of a claimant's treating physician be accorded 'controlling weight' if it is well supported and not inconsistent with other substantial evidence in the record." *Corporan v. Comm'r of Soc. Sec.*, No. 12-CV-6704, 2015 WL 321832, at *4 (S.D.N.Y. Jan. 23, 2015) (quoting *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)); *see also Gavazzi v. Berryhill*, 687 F. App'x 98, 100 (2d Cir. 2017) (summary order). If the ALJ decides that the treating physician's opinion does not merit controlling weight, she must "comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation

6

marks and citation omitted); *accord* 20 C.F.R. § 404.1527. The factors that the ALJ "must consider" include:

> (i) The frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *accord* 20 C.F.R. § 404.1527. Failure to provide "good reasons" for the weight assigned to a treating physician's opinion is a ground for remand. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see also Fontanez v. Colvin*, No. 16-CV-01300, 2017 WL 4334127, at *18 (E.D.N.Y. Sept. 28, 2017) (the ALJ's "failure to provide 'good reasons' for not crediting a treating source's opinion is ground for remand") (internal citations omitted).

But that determination cannot be made without a review of the treating doctor's records. Because the ALJ did not consider the entirety of the treating physician's record, her evaluation of his opinion was incomplete. Accordingly, remand is appropriate so that the ALJ can consider Dr. Seldes' treatment records, seek additional records or clarification if necessary to develop the record, and determine the appropriate weight to assign his opinion.[3]

---

[3] Although the ALJ was required to explain her reasoning, she was not required to give controlling weight to Dr. Seldes' opinion that the plaintiff was unable to work because the issue of whether a plaintiff is disabled is "reserved to the Commissioner." 20 C.F.R. § 404.1527(d); *see id.* ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); *see also Galgano v. Comm'r of Soc. Sec.*, No. 18-CV-4409, 2020 WL 2198176, at *4 (E.D.N.Y. May 6, 2020) ("[T]he ALJ was correct to afford 'no significant weight [to a doctor's opinion] that the claimant is disabled and unable to work as the ultimate question of disability is reserved to the Commissioner of the Social Security Administration.'").

7

## II. The RFC Determination

The ALJ found that the plaintiff had the residual functional capacity to do sedentary work with certain limitations. (Tr. 15.) The plaintiff challenges that determination as unsupported by substantial evidence because the ALJ did not consider the side effects of the plaintiff's medications. (ECF No. 16-1 at 18-19.)

Although the plaintiff did not claim that her medications affected her ability to work, she now says that "[a] reasonable person would expect some limitations for being off-task or loss of concentration for an individual being treated with opioid analgesics." (*Id.* at 19.) She suggests one side effect—the need to lie down—and cites the following testimony:

> Q [ALJ]      And do you take any medication for your knee?
> A [Plaintiff]   Percocet for the pain.
> . . .
> Q         And does the Percocet help?
> A         I'd say about two hours of the four I mean the six that I'm on it. So what I do is I just stay laid down, prop a pillow up under my shoulder, prop a pillow up under my leg and stay in that position as much as I can.

(Tr. 82-83.) A fair reading of this testimony is that the plaintiff was talking about whether the Percocet was effective, not whether taking it made her have to lie down. Nor is there any other support in the record that the plaintiff suffered side effects from her medication. "[W]here the record permits the court to glean the rationale of an ALJ's decision, we do not require that the ALJ have mentioned every item of testimony presented to h[er]." *Pound v. Comm'r of Soc. Sec.*, No. 17-CV-06331, 2019 WL 2453339, at *4 (S.D.N.Y. Feb. 12, 2019), *report and recommendation adopted*, 2019 WL 1434623 (S.D.N.Y. Mar. 31, 2019); *see id.* at *5 ("Although Plaintiff testified that his medications cause drowsiness, the record uniformly contradicts this position. For this reason, the ALJ was not required to discuss Plaintiff's side effects when she evaluated Plaintiff's RFC.").

8

The ALJ's consideration of the plaintiff's medication, in the context of her testimony that she "take[s] Percocet every 6 hours," and that "[t]he Percocet relieves her pain for only 2 hours after taking it," was appropriate. (Tr. 16.) The ALJ noted that "[a]lthough the [plaintiff] described minimal relief from Percocet, this complaint is not documented in the prescribing notes, and it does not stand to reason that [the doctor] would continue to prescribe an ineffective medication for over a year." (Tr. 18-19.) *See Smith v. Berryhill*, No. 18-CV-759, 2020 WL 1163856, at *5-6 (W.D.N.Y. Mar. 11, 2020) (rejecting the plaintiff's contention that the ALJ did not properly consider the side effects of her medications where the ALJ noted the medications that the plaintiff took, and where there was little support in the record that the plaintiff experienced side effects); *Martes v. Comm'r of Soc. Sec.*, 344 F. Supp. 3d 750, 768 (S.D.N.Y. 2018) ("[T]he record does not support [the plaintiff's] claimed side effects and the ALJ explained that she did not find his testimony entirely credible. The ALJ therefore did not omit a discussion of potentially significant factors without explanation, and we can glean the rationale of the ALJ's decision to omit any limitations due to alleged side effects of [the plaintiff's] medications.") (internal citations and quotation marks omitted).

Nor should the ALJ have assumed that the plaintiff was limited by side effects of her medication simply because a "reasonable person would expect some limitations." It is not the ALJ's role to make assumptions about limitations with no basis in the record. *See, e.g., Pound*, 2019 WL 2453339, at *5 ("Although Plaintiff notes that the side effects of his medications include drowsiness, he does not provide any evidence that Plaintiff himself experienced those effects.").

Neither *Deya v. Colvin*, 2016 U.S. Dist. LEXIS 119429 (S.D.N.Y. Sept. 1, 2016) nor *Arias v. Astrue*, No. 11-CV-1614, 2012 WL 6705873 (S.D.N.Y. Dec 21, 2012), upon which the

9

plaintiff relies, compel a different conclusion. In *Deya*, there was testimony and record evidence about a medication's side effects, which the ALJ did not discuss. 2016 U.S. Dist. LEXIS 119429, at *36-37. Similarly, in *Arias*, the ALJ did not address the plaintiff's testimony about her medication's side effects, which affected her ability to walk. 2012 WL 6705873, at *4.

Here, by contrast, the ALJ discussed the plaintiff's limited testimony about her medication, and the record does not include any evidence that suggests that the plaintiff's medication affected her ability to function. *See Martes*, 344 F. Supp. 3d at 768 ("But *Arias* is distinguishable because the ALJ in *Arias* ignored what the court characterized as 'potentially significant factors' and omitted certain testimony 'without explanation.'"); *see also Pound*, 2019 WL 2453339, at *5 (S.D.N.Y. Feb. 12, 2019) (In *Arias*, "[b]ecause there was a conflict in the claimant's testimony—and because that conflict was not clearly resolved by the rest of the evidence—the court would not have been able to 'glean the rationale' of the ALJ's decision. No such conflict exists here.").

## CONCLUSION

For the above stated reasons, the plaintiff's motion for judgment on the pleadings is granted. The Commissioner's motion for judgment on the pleadings is denied. The case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

                                                    s/Ann M. Donnelly

                                        ANN M. DONNELLY
                                        United States District Judge

Dated: Brooklyn, New York
          June 2, 2020